Exhibit A



# POLICE DEPARTMENT
## Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #1 |
|---|---|

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
|---|---|---|

| Accompanying Investigator(s): N/A |
|---|

| Subject: Complaint Receipt | Complainant: King on behalf of Bain |
|---|---|

| Date: 11/16/06 | Time: 0953 hours | Loc.: 347 Madison Ave 3rd Floor |
|---|---|---|

On 11/15/06 a complaint was received via US Mail from Raymond King, 333 Philadelphia Ave., Massapequa Park, NY 11762, 516-799-2488, on behalf of Stephen Bain, 8 Neilson St., Apt. D, New Brunswick, NJ 08901. King alleges that on 09/13/06 on or about 00254 hours, at Penn Station, NY, in the vicinity of the 33rd Street and Eight Ave. exit/entrance, Bain was arrested for disorderly conduct, resisting arrest, and assault by PO Robert Aronson. King alleges that during the course of arrest Bain was knocked unconscious by the police. King alleges that upon Bain regaining consciousness he recalls being told by one of the officers, "Welcome back to reality." King alleges that Bain recalls being kicked in the head and that the next time he regained consciousness he was at Bellevue Hospital. King alleges that Bain has suffered physical/serious physical injury as the result of his arrest and was admitted to Bellevue for treatment of his injuries.

King supplied the name of an alleged witness to this arrest. Dominick Tursi, 109 Reon Avenue, Staten Island, NY 10314, 718-490-6482. King alleges Tursi told him that Bain was taken into custody by 4 M/W Police Officers from an unknown agency. King alleges Tursi informed him that Bain was taken in handcuffs, in good condition, to a room identified as Room 236 in Penn Station. He alleges that Room 236 is an arrest processing room for AMTRAK PD and that the room has an AMTRAK PD sign on the outermost door.

King states in his letter that Bain is represented by Robert E. Brown, P.C., 30 Vesey St., 15th Floor, NY, NY 10007-2914 and that any attempt to interview or contact Bain must be made through Brown. King also stated that Inspector Lisa Shahade of AMTRAK is investigating this allegation as well.

On 11/16/06 at 0950 hours a telephone message was left for Insp. Shahade asking her to contact his Investigator.

Incident #2006-12112, attached to the case folder, was reviewed. The narrative of the incident and all supplements are as follows:

Original--"Arrest of one male for assaulting a police officer resulting in physical injury at Penn Station. Member of service received injuries to left leg and head. Injured prisoner received lacerations to face and OC spray exposure. Injured member of service and injured prisoner removed to hospital for treatment."

"On 9/13/06 at approximately 0020 hours, PO McDade and PO Aronson did observe a male subject, later identified as Stephen Bain, shouting profanities in the 8th Avenue Concourse of Penn Station. Officers further observed the male subject aggressively approach a male subject not known to him and attempt to physically assault him. Officers initially approached the subject and advised him to depart the area. The subject was not compliant with the officer's request to depart the area. Upon approaching the subject again, the subject was advised that he was under arrest at which time he fled on foot away from the officers in the vicinity of track # 17. PO McDade and PO Aronson attempted to place the subject under arrest at which time the subject did resist by flailing his arms and body and intentionally shoving the officer. PO McDade and the subject fell down the stair case of track # 17 descending to the first landing of the stair case where the subject continued to physically resist and assault the officer with a closed fist. A physical struggle continued on the first stair case landing causing both PO McDade and the subject to fall down the second portion of the stair case onto the platform of track # 17. PO McDade utilized his department issued OC spray on the subject as the subject was failing to comply with verbal commands and was continuing to physically resist. PO McDade transmitted an emergency request for assistance ("10-85") over his department radio. Upon arrival of assisting officers, the subject was physically subdued and successfully handcuffed.

PO McDade suffered injuries to his left ankle, left leg, and to his forehead. PO McDade complained of severe pain and immediate swelling was evident to his left ankle, left leg (below knee/shin), and forehead. PO McDade was unable to stand up on his own and unable to move his left leg. EMS was requested and responded to the platform of track # 17 to render aid to the injured member of service. PO McDade was removed to Bellevue Hospital by ambulance for further care and evaluation. Sgt. Richard Smith accompanied PO McDade in the ambulance to Bellevue Hospital.

The prisoner, Stephen Bain, was removed to District # 4 for processing. Upon placement into the District # 4 cell area, prisoner began to spit and flail his body striking himself on the floor, bench, and walls. Prisoner was handcuffed to the bench and ankle cuffs were placed to prevent further kicking. EMS was on scene in District # 4 at 0039 hours. NYPD Emergency Services Unit was requested for the violent prisoner whom was acting emotionally disturbed and/or under the influence of drugs and/or alcohol. NYPD Emergency Services Unit Truck # 1 responded to District # 4 at 0055 hours and flushed the prisoner's eyes with water for the OC spray exposure. They further subdued the prisoner with a restraining device. Prisoner was placed on a stretcher and removed to Bellevue Hospital by ambulance (ambulance # 08C, EMT # 6943) for further care and observation. PO Tully and PO Interdonati escorted the prisoner with EMS to Bellevue Hospital.

A telephone notification was made to Lieutenant Kevin Hoban of the MTAPD Internal Affairs Bureau. MTAPD Communications placed a telephone page notification to Inspector Kevin King, Commanding Officer of District # 4.

A Worker's Compensation package was completed for the injured member of service, PO McDade. A custodial injury package was completed for the injured prisoner.

MTAPD Arrest # 9073
NYPD Arrest # M06002101P, NYPD Fax # MO058956"

Supplement 1--"Defendants property vouchered/defendant lodged in MCB."

"Defendant was released from Bellevue Hospital at 1059hrs.  Defendant was concluded to be fit for confinement as per Dr. Johnston. Defendant lodged in MCB without further incident.  Defendants personal property was vouchered for safekeeping."

Supplement 2--"Prisoner removed from Manhattan Central Booking and brought back to Bellevue Hospital for further care/evaluation."

"Unit advised by District #4 supervision at 1550 hours to respond to Manhattan Central Booking and remove prisoner to Bellevue Hospital. Dr. Johnston advised NYPD court personnel that they needed to administer further medical attention.  Prisoner brought to Bellevue Hospital without incident."

Supplement 3--"Bedside arraignment conducted at Bellevue Hospital."

"On September 15, 2006 at 1430 hours a bedside arraignment was conducted for the Defendant, Stephan Bain, by Judge Laporte at Bellevue Hospital. The defendant was released on his own recognizance. Prisoner watch concluded."

Supplement 4--"Assignment:  Arrest Enhancement

Subject:  Case Assignment

Case Status:  Closed - Arrest Enhancement"

"On Monday, September 18, 2006 I, Detective DePola was assigned to investigate MTA Incident #06-12112 under DD #06-00828.

The defendant was arrested on September 13, 2006 for assault, disorderly conduct and resisting arrest. An E-Justice Inquiry was conducted and revealed that the defendant has no prior arrest record.  A copy of the E-Justice report is enclosed in this case folder.  Also, a Tiburon check was also conducted and showed this defendant has had no prior contact with this command.

A file 13 has been sent regarding this arrest and a copy is enclosed in the case folder.  No open cases within this command could be linked to this defendant and this case is closed as arrest enhancement.

Case Status:  Closed - Arrest Enhancement  (AE)"

A request was made to Insp. K. King and DI S. Montgomery for the following:

Any camera media that captures Bain's time in the District or anywhere in Penn Station.  A copy of the District Log for the date that encompassed this arrest, and copies of the memobooks of PO McDade, PO Aronson, PO Tully, PO Prego, PPO Smith, Sgt. Dittrich, Sgt. Smith, and Lt. Nutter.

Investigation to continue.

| | |
|---|---|
| Inv. Sign. | |
| C/O Sign. | |



# POLICE DEPARTMENT
## Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #2 |
|---|---|

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
|---|---|---|

| Accompanying Investigator(s): N/A |
|---|

| Subject: AMTRAK Follow Up | Complainant: King on behalf of Bain |
|---|---|

| Date: 11/30/06 | Time: 0700 hours | Loc.: 347 Madison Ave 3rd Floor |
|---|---|---|

On 11/16/06 Insp. Lisa Shahade, AMTRAK PD was contacted and requested to provide a copy of APD's interaction with Bain on 09/12-13/06.

On 11/29/30 a copy of AMP Inc. #2006-17667 was received by this Investigator. The narrative states that at 2345 hours on 09/12/06 Bain was observed in the rotunda of Penn Station (AMTRAK level). Bain was yelling at patrons. APD POs Cardinali and PO Unidentified approached Bain. Bain stated to them, "Fuck you. What are you looking at? I'm not scared of you." Bain was causing panic and alarm in the area. Bain was taken to APD Command Center, issued a Disorderly Conduct summons, and released without further incident. Upon exiting the Command Center, Bain refused to take his property, including $1.25 USC. APD Lt. Malloy advised PO Cardinali that he observed the MTA PD re-arresting Bain after he attempted to resist arrest while being disorderly.

Investigation to continue.

| Inv. Sign. | |
|---|---|
| C/O Sign. | |



# POLICE DEPARTMENT
### Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #3 |
| --- | --- |

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
| --- | --- | --- |

| Accompanying Investigator(s): N/A |
| --- |

| Subject: EMS Follow Up | Complainant: King on behalf of Bain |
| --- | --- |

| Date: 11/30/06 | Time: 0700 hours | Loc.: 347 Madison Ave 3rd Floor |
| --- | --- | --- |

On 11/27/06 FDNY EMS Investigator Capt. Monte Fielder was contacted. He stated that EMT Wallace, #6943 was not employed by FDNY, but by NYU Medical Center. He provided the name of Jessica Kovak, Administrator Director of NYU, at 212-263-3293.

Kovak was contacted and she reported that Wallace is employed by TRANSCARE. She provided the name of Don Cardone, Corp. Dir. Quality Assurance and Corp. Compliance and a fax of 718-209-1381. A request was faxed to Cardone asking the WMT Wallace, and his partner "Ramos" be made available for an interview relative to their observations of Bain on 09/13/06.

Investigation to continue.

| Inv. Sign. | |
| --- | --- |
| C/O Sign. | |



# POLICE DEPARTMENT
## Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #4 |
|---|---|

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
|---|---|---|

| Accompanying Investigator(s): N/A |
|---|

| Subject: Witness Interview | Complainant: King on behalf of Bain |
|---|---|

| Date: 12/19/06 | Time: 0928 hours | Loc.: 347 Madison Ave 3rd Floor |
|---|---|---|

On 12/19/06, alleged witness to the arrest of Bain on 09/13/06, Dominick Tursi, DOB 05/30/80, 109 Reon Avenue, Staten Island, was interviewed. Tursi stated that he has known Bain for 6-7 years and had met him through a friend. He stated that on 09/12/06 at approximately 6:30 pm, he and Bain had arrived at the Bennigan's on the AMTRAK level of Penn Station. He stated that they were in the city to attend an 8:00 pm Everclear concert at Irving Plaza. He stated that while at Bennigan's, he and Bain consumed either 1 or 2 Stella's, an Italian beer, before they departed. Prior to the concert they stopped at another bar (Tursi did not recall the name) and had one more beer each. Tursi stated that while at the concert, they each consumed approximately 2-3 Becks' beers, along with an undetermined amount of shots of Jaegermeister. He stated that he does not know Bain to use drugs.

Tursi stated that after the concert he and Bain went to Penn Station. He stated upon arriving at Penn Station, while walking down the stairs from Madison Square Garden, "cops" (AMTRAK PD) tackled Bain, put him against a wall, and took him to a back room. He stated that after that he did not see Bain again for three days. Upon further questioning, Tursi stated that he and Bain entered Penn Station from what he described as the old taxi lane under the Garden. He stated that Bain was "talking to all these people" and "annoying" them. He stated that it was then when the cops tackled Bain and that one of the cops had told him that Bain had hit someone. He stated that he did not see Bain hit anyone and that he was just trying to get them home. Tursi further stated that Bain did not know any of the people he was talking to and that these people did not want to talk to him. He stated that the room he saw the cops take Bain had an AMTRAK Police sign on the door. (This door is the AMTRAK Police room by the 8th Avenue exit.)

Tursi stated that he was under the impression that Bain was arrested for disorderly conduct for annoying people. He stated that he did not go to work the next day until 1:00 pm due to his trying to bail Bain out of jail. He stated that he kept calling Bain's cell phone but did not speak with him for three days. He stated that when he spoke with Bain he was told that "he got his ass kicked", that "he was never given water", that "he was held prisoner", and that the "only way he got released was when Bain's mother found out he was in the

hospital and threw a fit, they got a judge down there, who upon seeing him, let him go in his own recognizance."

Tursi stated that Bain told him that he "caught a beating in there", that he remembers "them hitting him and then waking up", that someone said to him "look who's coming around", then "being stomped on and knocked out" and that the next thing he knew "he was waking up in the hospital." Tursi stated that Bain never told him that he was issued a summons by AMTRAK PD, released by them, and then arrested by the MTA Police.

Investigation to continue.

| Inv. Sign. | | |
|---|---|---|
| C/O Sign. | | |



# POLICE DEPARTMENT
### Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #5 |
|---|---|

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
|---|---|---|

| Accompanying Investigator(s): N/A |
|---|

| Subject: Review of Patient Call Report #7142103, prepared by EMT Wallace | Complainant: King on behalf of Bain |
|---|---|

| Date: 01/08/07 | Time: 1230 hours | Loc.: 347 Madison Ave 3rd Floor |
|---|---|---|

On 01/04/07, Patient Care Report #7142103, prepared and signed by EMT Jonathon Wallace on 09/13/06 was received from TRANSCARE . On 01/08/07 the form was reviewed with EMT Wallace.

The form identifies Bain as a 29 year old male of approximately 175 lbs. The form lists the chief complaint as "he went berserk and fought cops." It lists the presenting problems as "Psychotic/Suicidal" and "Drug". It states that Bain was maced, that he has unknown medical history, as well as unknown allergies. The form states that Bain's temperature, blood pressure, pulse, and respiration were unable to be obtained due to patient being belligerent. Skin color, temperature, and condition were observed to be normal. Mental status was deemed to be alert and oriented, even though he was "crazy". Pupils and lung sounds were deemed normal. A total of 15 (maximum number) on the Glasgow Coma Scale was deduced indicating Bain exhibited a maximum level of alertness and was not unconscious. A 12 (maximum number) on the Trauma Scale again indicated Bain was not unconscious and not badly injured. The patient condition indicates that the patient is a high priority, meaning that the patient should be taken to the hospital quickly, due to the patient being belligerent or thrashing, or accompanied by the police, in order not to have an incident in the ambulance. Wallace explained that when a patient is acting in the manner that Bain was acting he would transport the patient ASAP to the nearest hospital. The presumptive diagnosis stated "Intox/STI (Soft Tissue Injury, which is the lowest, least important possible category of physical injury) 29 year old male patient found restrained at LIRR Police Base. Patient is intoxicated. Patient fought with police and was maced. Patient reveals positive airway, negative SOB (shortness of breath), skin unremarkable, swelling over left eyebrow, laceration over right eyebrow. Patient's eyes flushed with sterile water. Patient restrained by ESU (kicking and screaming), given 02 nonrm @ 15 lpm (oxygen via non re-breathing mask at 15 liters per minute) and transported to Bellevue. The form indicates that Bain was unable to sign as he was "bagged by ESU".

Wallace stated that the only reasons he would administer oxygen to an EDP patient that was not suffering impaired breathing ability was if the patient was screaming so badly that he feared the patient would get out

of breath, that if the patient was restrained on his stomach or as a safety measure for EMTs or Police Officers if the patient was "spitting". He stated that the non re-breathing mask is plastic and can not be chewed through like a mask constructed of cloth. Wallace stated that if he did not write the patient had lost consciousness, it would be for one of three reasons: the Officers did not tell him that the patient was unconscious, the patient did not tell him he had lost consciousness, or that the patient was not observed to be unconscious. Wallace stated that he did not observe the patient in a state of unconsciousness. Wallace stated that he believed Bain to be intoxicated and suffering from the effects of an unidentified drug. Wallace stated that he did not document any other physical injury to Bain as he could not examine him more closely due to Bain being dangerous and violent. He further stated that he did not observe any other obvious injury that presented itself in terms of a smashed or broken bone, or anything of that nature.

Investigation to continue.

| Inv. Sign. | *Tenterus, LT.* | |
|------------|------------------|--|
| C/O Sign.  |                  | |



# POLICE DEPARTMENT
Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #6 |
| --- | --- |

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
| --- | --- | --- |

| Accompanying Investigator(s): Lt's. Hoban and Sparno |
| --- |

| Bain: Police Officer Interviews | Complainant: King on behalf of Bain |
| --- | --- |

| Date: 01/10/07 | Time: 1221 hours | Loc.: 347 Madison Ave 3rd Floor |
| --- | --- | --- |

On 01/10/07 the following members of service were interviewed: Sgt. Dittrich, PO Tully, Sgt. Smith, PO Interdonati, PO Smith, PO Prego, PO Aronson, and PO McDade.

### Sgt. Dittrich
Dittrich stated that on 09/13/06 at approximately 0020 hours he was on duty and assigned to Penn Station as a patrol supervisor. He stated that at approximately 0020 hours he was inside the District Office when he heard an emergency "10-85" transmitted over the radio advising of an incident on the west end of Track 17. He stated that he responded to the location and that upon his arrival he observed a male being restrained by other Officers. He stated that the male was acting violently and physically resisting the arrest. He stated that Bain had been sprayed with OC spray by one of the Officers. Dittrich stated that Bain was kicking, screaming, and failing to cooperate. Dittrich stated that he observed PO McDade on the platform holding one of his legs and that McDade was in pain. He added that he observed a scrape on McDade's forehead. He stated that he observed PO Interdonati attempting to restrain Bain, who was pushing and shoving, attempting to spit on the Officers, and that Bain had blood on his face. Dittrich stated that once Bain was handcuffed he had to be carried up the staircase because he refused to walk. Upon arrival at the District Office Bain was placed into the cell area, where he was still physically uncooperative, and was handcuffed to the wood bench directly outside the cells. Dittrich stated that Bain continued to kick and that his feet had to be restrained to the bench as well. He stated that ESU was called to assist with what appeared to be an emotionally disturbed prisoner. Dittrich stated that Bain was under the influence of alcohol, or a combination of drugs. Dittrich stated that he based this conclusion on the overall demeanor of Bain being consistent with that of use of alcohol or drugs. Dittrich cited the amount of strength Bain was putting forward as well as the intensity of his violence. He stated that Bain had defecated on himself and was continuing to spit. He stated Bain was saying that he was their friend and asking to be let go, and that then he would become violent, acting irrationally. When ESU arrived, they placed Bain in a "bag" that restrained him from his ankles to his neck. Dittrich described the bag as a flat blanket made of mesh material with straps on it that prevent movement of the legs and arms. Dittrich stated that EMS arrived and transported Bain to the hospital.

Dittrich stated that he conducted brief interviews of both Aronson and McDade in order to prepare the incident report, the injury to member of serve report, and the custody injury report. He added that he obtained memorandums (included in the case folder) from both Officers detailing what had transpired. Dittrich stated that PO Aronson had told him that he had observed Bain by the Starbucks on the 8th Avenue Concourse shouting profanities at people in the area that he did know. He stated that Aronson told him that he and McDade approached Bain to inquire about his behavior and that Bain became belligerent and uncooperative. He stated that Aronson and McDade made a decision to place Bain under arrest and that as McDade attempted to place Bain in handcuffs a physical confrontation occurred at the top of the stairs to Track 17. He stated that both Bain and McDade fell down the first set of stairs and came to a stop on the landing. At this point the struggle continued causing both Bain and McDade to fall down the next set of stairs to the platform. He stated that McDade told him that Bain had grabbed his cell phone from his belt and thrown it onto the track area. Dittrich stated that after Bain was released form the hospital he was lodged at MCB. He stated that after he had gone off duty, doctors from the hospital called and wanted to re-examine Bain due to what he believed was something they observed in his scan or x-rays that they were unsure about.

Dittrich stated that he observed Bain a majority of the time that he was in the District. He stated that he did not observe Bain lose consciousness, nor was told by anyone that Bain lost consciousness. He added that Bain did not stop talking while in the District and that even if Bain was out of his sight, he heard Bain screaming and yelling. He stated that Bain did not tell him that he had lost consciousness. He stated he did not observe any Officer kick Bain in his head nor did Bain state that he had been kicked in his head. He stated that he did not hear anyone say to Bain, "Welcome back to reality." Dittrich stated that he attempted to conduct an interview of Bain for the prisoner condition form. He stated that Bain was extremely agitated and very uncooperative, and that the only injuries that he recorded were those that were observable, the exposure to OC spray and lacerations about his face. He added that Bain made no mention to him of any other injury. Dittrich stated that he did not observe any mistreatment of Bain while in the care of the MTA Police nor does he possess any knowledge of alleged mistreatment to Bain.

## PO Tully

Tully stated that on 09/13/06 at approximately 0020 hours he was on duty and assigned to Penn Station. He stated that at approximately 0025 hours he responded to the west end of Track 17 for a call for immediate assistance from PO McDade. He stated that upon his arrival at the platform he observed several Officers attempting to restrain an individual (later identified as Bain) who had one arm behind him with a handcuff on. He stated that Bain was resisting the Officers and that the Officers were telling him not to resist and that he was under arrest. He stated that Bain was kicking at the Officers and swinging his free arm at them. He stated he saw PO McDade holding his leg and crying out in pain. Tully stated he grabbed one of Bain's legs, told him not to resist and that he was under arrest. He stated that eventually Bain was fully handcuffed and escorted to the District Office. Tully stated that he stayed with McDade to see if he was alright, then he went to the District. He stated that when he arrived at the District he observed Bain in the cell area. He stated that Bain was screaming in an incoherent manner, kicking his legs, acting totally out of control, and that he was bleeding from his nose and by his eye. Tully stated that Bain was not placed into the cell due to his behavior. He stated that Bain was handcuffed to the bench outside the cell. He stated that Bain dropped to the floor, continued kicking like crazy and banging all parts of his body. Tully stated he told Bain to relax. He stated

that Bain continued to bang his head and kick his feet. He stated that Bain started to spit blood and that he attempted to place a surgical mask over his face but Bain kept shaking his head and spitting. He stated that NYPD ESU was contacted to assist as Bain was out of control. He stated that ESU arrived and attempted to speak with Bain to calm him but Bain did not cooperate. He stated that ESU placed Bain in a "restraining bag" and put a mask on him to prevent him from spitting any more blood. He stated he has no knowledge of Bain losing consciousness, adding that Bain was very physically active. He stated that he did not kick Bain in the head, that he saw no Officer kick Bain in the head, and that Bain did not tell him that he lost consciousness or that he was kicked in the head. Tully stated that he would classify Bain's behavior as that of one who was under the influence of drugs or alcohol due to his being wildly out of control and failing to listen to anything that he said. Tully stated that he observed no injury to Bain other than the facial injury and that Bain made no mention to him of any other injury. Tully stated he did not observe any mistreatment of Bain by NYPD ESU or MTA Officers. Tully stated that he escorted the ambulance to Bellevue and that he and PO Interdonati remained with Bain at the hospital until relieved by the next tour. He stated that in the hospital Bain had moments where he would be loud but would then calm down. Tully stated that while at the hospital he spoke only briefly with Bain. He stated that Bain had asked to use the bathroom, that was brought to the bathroom and that the door was left open so he could be observed. He stated that as Bain was washing his hand he looked in the mirror and asked what happened to his face. Tully stated he told Bain that he was under arrest for fighting with a Police Officer and resisting arrest and that he had fallen down the stairs. He stated it appeared to him that Bain had no recollection of the event. He stated that Bain made no admissions to his actions.

### Sgt. Smith

Smith stated that on 09/13/06 at approximately 0020 hours he was on duty and assigned to Penn Station as a plain clothes Sergeant. Smith stated there was a call for assistance call at Track 17, and that he responded. He stated that upon his arrival at Track 17 he observed PO McDade on the ground holding his leg and that he jumped over McDade to assist 3 or 4 Officers who were struggling with a subject (Bain) who had one hand cuffed. He stated that he assisted in getting Bain handcuffed. He stated that after Bain was handcuffed he instructed the Officers to remove him to the District. He stated that as the Officers were beginning to go up the stairs Bain, on his own, tripped. He was lifted up and brought to the District. Smith stated that he was unsure if Bain had to be carried to the District or if he went under his own power. He stated that upon arrival at the District Bain was put in a cell and that Lt. Nutter instructed him to go to the hospital with McDade. Smith stated that Bain, while en route to the District was saying, "You guys win, you win, you win." He stated that while in the cell area Bain was still fighting a little bit. Smith stated he observed blood on the head area of Bain. Smith stated he rode in the ambulance with McDade to Bellevue. Smith stated that he saw Bain at Bellevue but did not speak with him. He stated that he was not told that Bain had lost consciousness nor did he observe Bain unconscious. Smith stated that he did not see anyone kick Bain in the head, that he was not told by anyone that Bain had been kicked in the head and that he did not kick Bain in the head. Smith stated he was told by Lt. Nutter that AMTRAK PD had had Bain in custody earlier for being drunk and disorderly and that he had been issued a summons by AMTRAK PD. He stated that Bain did not make mention of being injured. Smith stated that he knows of no mistreatment committed on Bain by either the MTA PD or NYPD. He stated that Bain made no admissions to him concerning his actions. He stated that he did not observe Bain spitting.

## PO Interdonati

Interdonati stated that on 09/13/06 at approximately 0025 hours he was on duty and assigned to Penn Station. He stated that it was at about that time that a call for forthwith assistance came over the radio. He stated that when he arrived at the staircase he observed McDade and the subject (Bain) at the bottom of the stairs with McDade on top of Bain and that McDade was struggling with him. He stated that Bain's left arm was already handcuffed and that Bain's right arm was under his body. He stated he restrained Bain's legs because flailing. He stated Bain was bleeding and that he was trying to spit on the Officers. Interdonati stated that after Bain was handcuffed, McDade rolled off of him as he had sustained some type of injury to his leg. He stated that he believed Bain walked under his own power to the District where he continued to flail and kick so he was restrained to the bench with his legs being shackled. He stated that he then went to meal. Interdonati stated that he observed blood on Bain's face and on the ground. He stated that Bain was screaming and that blood and mucous was flying everywhere. He stated that Bain was screaming for the Officers to get off of him. Interdonati stated he observed ESU with Bain, that he observed them place Bain into the bag restraint, and that Bain was screaming and yelling. He stated that he was in the District when EMS was there but did not see EMS treat Bain. Interdonati stated that he did not see Bain lose consciousness, nor did Bain tell him that he had lost consciousness. He stated that he did not see any Officer kick Bain in the head, that he did not kick Bain in the head, and that Bain did not tell him that he was kicked in the head. Interdonati stated that Bain's behavior was very irrational, possibly caused by drugs or alcohol, that he did not listen to anything the Officers had to say, and that he was uncooperative and combative. He stated that Bain made no mention of being injured. He stated that he does not know of any mistreatment of Bain. Interdonati stated he rode in the ambulance with Bain to Bellevue where he and Tully guarded Bain until 0900 hours. He stated he spoke with Bain when Bain asked to use the bathroom. He stated that Bain was allowed to use the bathroom and it was then that Bain appeared to first notice the injuries to his face. He stated that Bain started to cry and asked what had happened to his face. Interdonati stated that he told Bain that he was fighting with the police and that he was under arrest. He stated that Bain made no admissions relative to his actions. He sated that Bain's demeanor in the hospital was still irrational, that he was combative and argumentative with the doctors and the nurses that were trying to help him. He stated that Bain started to come down a bit and relax before he was relieved at the hospital.

## PO Smith

Smith stated that on 09/13/06 at approximately 0025 hours he was on duty and assigned to Penn Station. He stated that he heard a call for assistance and responded to the location. He stated that upon his arrival he observed 2 Officers wrestling with the subject (Bain) on the platform. He stated that he got into the mix and assisted in handcuffing Bain. He stated that after Bain was cuffed everyone got off of him. He stated that he patted Bain down to make sure he did not have any weapons. He stated the Sergeant told him to take Bain to the District and that as they went to go Bain tripped on the stairs. He stated other Officers helped them up. He stated that Bain had to be physically carried to the District and that he fought the entire way. Smith stated he did not initially see any injury to Bain but later on he noticed that Bain was bleeding from his head. Smith stated that he assisted in putting Bain in the cell area and that Bain was kicking and spitting. He stated that he was unsure if Bain was leg shackled. He stated that he observed NYPD ESU come into the District but did not observe their interaction with Bain. He stated that he observed EMS come into the District but did not observe their interaction with Bain. Smith stated that he has no knowledge of Bain ever losing consciousness, that he did not observe Bain unconscious and that Bain never told him that he had lost consciousness. He stated that he did not observe Bain get kicked in the head, that Bain never said he was

kicked in the head and that no one told him Bain was kicked in the head. Smith stated that he could not say if Bain was under the influence of a drug or alcohol, but he did state that Bain did not seem normal. He stated that Bain did not make mention of any injury and that he did not observe any injury other than that on his face. He stated that he did not observe any mistreatment of Bain by anyone. He stated that Bain offered no explanation for his actions nor did he make any admissions relative to using alcohol or drugs.

### PO Prego
Prego stated that on 09/13/06 at approximately 0025 hours he was on duty and assigned to Penn Station. He stated he responded to Track 17 for a call for assistance and that upon his arrival he observed PO McDade lying on the floor holding his left leg yelling in pain. He stated McDade was suffering from a cut to his forehead, bleeding hands and left leg pain. He stated that he administered aid to McDade while several Officers were attempting to subdue that subject (Bain). He stated that he remained with McDade until EMS arrived and did not return to the District until after McDade had departed for the hospital. He stated that he went back to the District. He stated he does not recall if he was in the District when EMS or ESU arrived there. Prego stated that he recalled muffled yelling from Bain while in the District but does not know what Bain was trying to say. He stated he does not recall if he observed seeing any injury to Bain. He stated that he conducted no conversation with Bain. He stated that he has no knowledge of Bain losing consciousness, that he did not see Bain unconscious and that Bain made no mention of being unconsciousness. He stated that he did not know if Bain was intoxicated. Prego stated he does not know of any mistreatment to Bain during his arrest.

### PO Aronson
Aronson stated that on 09/13/06 at approximately 0025 hours he was on duty and assigned to Penn Station. He stated that while in the vicinity of the 8th Avenue concourse with PO McDade, he observed Bain acting disorderly and screaming in a loud voice, "You can't trust the fucking police." He stated he observed Bain walking up to commuters who were waiting for their trains and yelling at them, in an irrational manner, in words that did not seem to make any sense while waving his arms around. He stated Bain approached a male commuter and got "in his face." He stated the commuter looked to him as if to ask, "What's this all about?" He stated that he and McDade approached Bain and asked him if there was a problem. Aronson stated Bain continued to act in an irrational manner, yelling obscenities and waving his arms around, and that they instructed him to leave the station several times as he was noncompliant. He stated that Bain was then escorted towards the stairway and escalator that leads to the AMTRAK level. Aronson stated Bain turned 180 degrees and began to head back in the direction that he had just come from. He stated McDade told him that he was going to arrest Bain and that McDade told Bain he was under arrest. He stated McDade attempted to take Bain by the arm and that Bain pulled his arm away and began to run. Aronson stated that McDade gave chase and caught Bain at the top of the staircase to Track 17, again attempting to physically restrain Bain and place him under arrest. He stated he was approximately 20 feet away. Aronson stated that prior to his reaching McDade, he observed Bain violently struggling, moving his arms around, and physically resisting McDade. Aronson stated that he then observed both McDade and Bain fall down the stairs and that the fall was caused by Bain's resistance to being arrested. He stated that when he arrived at the top of the stairs he observed McDade and Bain on the landing that is half way down the stairs. He stated he observed Bain in a prone position and that McDade was on his knees. He stated that McDade had applied one handcuff to Bain's wrist and that McDade had called for assistance on the radio. He stated that when he got to the landing he used both his hands to attempt to place Bain's free hand in cuffs. That McDade was also trying to

cuff the free hand, and that neither of them could get Bain's arm to move. Aronson stated that he released Bain's arm and attempted to reposition himself. He stated that as he did so Bain began to violently resist, causing both Bain and McDade to fall down the remainder of the stairs to the platform. Aronson stated that they did not roll down the stairs, rather they slide down, with Bain on top of McDade. He stated that upon reaching McDade on the platform, McDade told him that he was going to use his pepper spray on Bain. He stated that as McDade went to his belt to get the spray, Bain resisted by grabbing at McDade's arm, all the while yelling and cursing. He stated that McDade sprayed Bain with the pepper spray and that Bain did not react to the spray. He stated that other Officers arrived and Bain was finally handcuffed. He stated that Bain was stood up and as they started to walk towards the District, Bain resisted by not walking, so they had to basically carry him. He stated that Bain was brought into the cell area and he thinks that Bain was seated on the bench. He stated that he remembers Bain sitting on the floor, then laying facedown on the floor, and that he observed Bain bang his own head on the floor at least one time, while continuing to yell and scream. He stated that ESU was then notified to respond to assist. Aronson stated that upon arrival of ESU, they placed Bain in a restraining bag. Aronson stated he did not observe the interaction between ESU and Bain. He stated that when EMS arrived, Bain was placed on a gurney and transported to the hospital. Aronson stated that he observed blood on Bain's face while on the platform. He stated that he did not observe and injury to Bain prior to the incident on the stairs to Track 17. He stated that he recalls a plastic shield or facemask put over Bain's face to prevent him from spitting. Aronson stated that he has no knowledge of Bain losing consciousness, that he did not see Bain unconscious and that Bain made no mention of being unconsciousness. He stated that he did not kick Bain in his head, that he did not see Bain get kicked in the head, and that Bain did not tell him he was kicked in the head. Aronson stated that based on his experience as a Police Officer he is of the opinion that Bain, due to his behavior, was under the influence of a drug or drugs. He stated that Bain made no mention of any injury nor did he observe any other injury. Aronson stated that he does not know of any mistreatment towards Bain. He stated that Bain made no admissions and offered no explanations for his actions. Aronson stated that he was assigned prisoner watch at the hospital the following day. He stated that Bain's demeanor was completely opposite from that of the preceding day. He stated that Bain was calm, quite and acting like a normal person. He stated that he asked Bain if he had consumed drugs or alcohol the preceding night and that Bain did not answer the question. He stated that he asked Bain if he knew why he was in the hospital and that Bain stated he had no recollection of the event.

## PO McDade

McDade stated that on 09/13/06 at approximately 0025 hours he was on duty and assigned to Penn Station. He stated that he was in front of Starbuck's on the 8th Avenue Concourse speaking with PO Aronson when he observed Bain come down the stairway from the AMTRAK level. He stated that Bain was yelling, "Don't trust the fucking police, they will keep you here. Assholes." He stated Bain saying this numerous times. He stated that he and Aronson asked Bain to leave the station and that Bain started to walk towards the center stairs with he and Aronson following at a distance of about 10-15 feet. He stated that Bain was approaching numerous commuters, flailing his arms at them in a threatening manner. He stated that Bain turned around, approached a commuter, screamed and flailed his arms at him causing the commuter to take a step back. McDade stated he told Bain that he was under arrest and that Bain attempted to run away, getting about 15 feet before McDade was able to grab him. He stated that Bain immediately began to fight him, causing them both to fall to the ground. He stated upon falling to the ground and while attempting to restrain Bain's hands, both of them fell down the stairs to the first landing, with Bain on the bottom. McDade stated that he was not injured as of yet, that Bain was still fighting him, and that he called for assistance on the radio before he was

able to get one handcuff on Bain. He stated Bain was kicking and yelling, "Get the fuck off me. Fuck you." He stated they then fell down the remainder of the stairs, landing on the platform with Bain on top. McDade stated that he suffered injuries to his head, hands and ankle. He stated he told Aronson that he was going to pepper spray Bain and to watch his eyes. He stated that as he attempted to remove his spray Bain was grabbing at his hands and that Bain grabbed his cell phone from his gun belt and threw it onto the tracks. He stated he sprayed Bain and the pepper spray had no effect. McDade stated that as other Officers arrived to assist he rolled out of the way. McDade stated that upon first observing Bain he did not see any injuries. McDade stated that he remained on the platform with PO Prego and that he was removed to the hospital directly from the platform. He stated that Bain continued yelling and screaming the entire time, including when the other Officers arrived. He stated Bain was yelling, "Fuck you, get the fuck off of me you fucking assholes." McDade stated that his initial impression was that Bain was an emotionally disturbed person. He stated that he did not observe Bain unconscious at any time and that Bain never stopped yelling. McDade stated he has no knowledge of Bain getting kicked in the head. McDade stated that he is of the opinion that Bain was under the influence of drugs as neither the pepper spray nor handcuff control techniques had any effect in bringing Bain into compliance.

| Inv. Sign. | |
|---|---|
| C/O Sign. | |



# POLICE DEPARTMENT
## Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #7 |
| --- | --- |

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
| --- | --- | --- |

| Accompanying Investigator(s): Lt's. Hoban and Sparno |
| --- |

| Subject: Bain Interview | Complainant: King on behalf of Bain |
| --- | --- |

| Date: 01/25/07 | Time: 1136 hours | Loc.: 30 Vesey Street, NY, NY |
| --- | --- | --- |

On 01/25/07 complainant Steven Bain was interviewed in his attorney's office at 30 Vesey Street. Present for Bain were attorney Robert Brown and private investigator Raymond King.

**Bain**
Bain stated that on 09/12/06 he arranged to meet his friend Dominick Tursi in Penn Station and then attend an Everclear concert at Irving Plaza. He stated he left work on 280 Park Avenue at 48th Street at approximately 5:40 pm and met Tursi at Penn Station at approximately 6:30 pm. He stated that he was in transit for the 50 minutes via the Shuttle and Number 1 Train. He stated that upon meeting Tursi they left Penn Station without going anywhere inside the station. He stated that they stopped at a bar/restaurant down the street from Penn, a place that he does not know the name of, where he consumed one beer. When asked if he and Tursi had gone Houlihan's, he stated yes he did, that it was the meeting place, and that he consumed perhaps 2 beers while there. (Tursi stated in his interview that they met at Bennigan's.) He stated he believes, but does not really know, if they took a cab to the show. He stated that while at the concert he consumed another couple of beers and that he also consumed 1 shot of Jagermeister. Bain stated that he estimates he left the concert at approximately 10:45-10:50 pm and took a cab directly to Penn Station. Bain stated that he could not say with any certainty where he entered Penn Station. He describes possibly entering Penn from what appears to be the 7th Avenue entrance at the newsstand. Bain stated that he has no recollection of approaching strangers, attempting to engage them in unsolicited conversation and annoying them. He stated he has no recollection of AMTRAK Police Officers approaching him and him saying to them, "Fuck you. What are you looking at? I'm not scared of you." He stated that he does not recall any interaction with AMTRAK police except being kicked in the head by one of them or the MTA Police. Bain stated he believes that he was kicked in the head in an AMTRAK room, yet he states that he has no recollection of being taken there. Bain stated that he has no recollection of being summonsed for disorderly conduct by the AMTRAK Police. Bain stated that he has no recollection of ever being brought into an MTA Police facility. Bain was asked if he could say with any certainty that it was the MTA Police who inflicted his injuries and he replied that could not. Bain stated that he did not recall being asked to leave Penn Station

by the MTA Police. He stated he has no recollection at all of being arrested by the MTA Police. He stated that he has no recollection of falling down a flight of stairs with an MTA Officer. He stated that he does not have any recollection of being placed into a restraining bag. He stated that he has no recollection of being examined by FDNY EMS. He stated that he has no recollection of trying to spit on Officers or EMS. He stated that he recalls having mug shots taken and being in a holding cell when an Officer told him that he would have to go back to the hospital as he has a serious skull injury. He stated that he had a bedside arraignment and that he was released on Friday (09/15/06). He stated that while in the hospital he was in and out of consciousness. He stated that he cold recall what transpired in the hospital as the week went on. Bain stated that while in the hospital, in between either Wednesday to Thursday or Thursday and Friday night, there were 2 Officers who must have thought he was asleep, as he was in and out of consciousness, a 6' 4" bald, shaved headed, white Officer spoke to a black Officer, talking about the beating that he caught from the MTA Police, or words to the effect of you should have seen the beating this guy caught. He stated that a nurse had asked this Officer to let him shower as he had not showered in 3 days and that the Officer said, "Fuck that guy" or words to that effect. Bain stated that this is consistent with the treatment he received by the other Officers who had guarded him in the hospital. He stated that other Officers would place his water just out of his reach. He stated that he has handcuff injuries to his left arm that have caused nerve damage. He added that he also has a broken skull to the sinus area, a broken nose, permanent nerve damage in the left arm, and nerve damage to the right arm. He stated that he had a size twelve on his back. Bain's attorney produced photos depicting facial bruising and body bruising. He stated while in the hospital he told the Officers and the nurses that his handcuffs were too tight. He stated that while in the hospital there was an Officer who was particularly nice to him, asking him if he knew the seriousness of the charges against him. He stated that prior to being transported to the holding cell by a male and female Officer, they had not done any search of him. He guesses that one of them rubbed up against him and felt something is his pocket. He stated that he had in his possession an I-Pod, a cell phone, and a pack of cigarettes. He stated that they searched him and that the male Officer took a cigarette out of the pack, said to him, "I bet you want one of these right now." He then threw the cigarette out in front of him. He stated that he does not know any of the Officers names, that he only knows them from reading the report. Bain stated that prior to his interaction with the Police he had not consumed any drugs, legal or otherwise, except for an antibiotic, perhaps Cipro, for an infection he had, adding that he might have stopped taking it at the time of this incident. Bain stated that he has never had a black out episode in the past, nor has he been treated for psychotic episodes.

| Inv. Sign. | | |
|---|---|---|
| C/O Sign. | | |



# POLICE DEPARTMENT
Metropolitan Transportation Authority

## INTERNAL AFFAIRS BUREAU
### INVESTIGATING OFFICER'S REPORT

| Investigator: Lt. Pontorno | Worksheet #8 |
|---|---|

| Case # CC 2006-72 | Event/Incident 06-12112 | Other # N/A |
|---|---|---|

| Accompanying Investigator(s): N/A |
|---|

| Subject: NYPD Sgt. Glaudino ESU Interview | Complainant: King on behalf of Bain |
|---|---|

| Date: 02/07/07 | Time: 0725 hours | Loc.: 347 Madison Avenue |
|---|---|---|

On 02/07/07 Sgt. Glaudino, NYPD ESU was interviewed. He stated that he recalled the incident involving Steven Bain. He stated that he arrived at the MTA PD District Office at Penn Station and observed Bain either in the cell or in the cell area. He stated that Bain was out of control, flailing his arms and kicking his legs. He stated that he informed Bain that if he did not calm down he would be "Tasered." He stated that he washed out Bain's eyes with saline solution as Bain had been exposed to pepper spray. Glaudino stated that Bain had to be put into a restraining bag in order to be safely transported by EMS to the hospital for treatment. He stated that Bain was not unconscious during the time that he was there. He stated that he did not see any mistreatment of Bain while he was there and did not observe any person kick Bain in the head. Glaudino added that he had to place either a mask or face shield on Bain as he was repeatedly spitting blood. He further added that Bain appeared to be under the influence of an intoxicant and based that observation on Bain's behavior.

| Inv. Sign. | |
|---|---|
| C/O Sign. | |